UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| SHREVEPORT PLAZA, L.L.C. | CIVIL ACTION NO. 05-1516 |
| versus | JUDGE HICKS |
| DOLLAR TREE STORES, INC. | MAGISTRATE JUDGE HORNSBY |

_____

**REPORT AND RECOMMENDATION**

**Introduction**

The case involves a dispute over the proper expiration date of a commercial lease. The tenant contends it provided timely notice of its election not to renew the lease for an additional five year term. The landlord contends the tenant miscalculated the expiration date of the lease and submitted its notice too late, thereby obligating tenant to an additional five year term. Resolution of the dispute requires a careful examination of the lease documents and, in particular, two letters (confirmation certificates) setting forth two different lease expiration dates.

The first confirmation certificate was executed shortly after the commencement date of the lease. The tenant contends that certificate sets forth the proper expiration date (October 31, 2005). The second certificate was executed almost five years after the lease commenced and after the tenant had issued its notice of non-renewal. The landlord contends

that this second certificate sets forth the proper expiration date (September 30, 2005). If the tenant is correct, its notice of non-renewal was timely; if the landlord is correct, then the tenant's notice of non-renewal came too late, and the tenant is bound to another five year term under the lease.

**The Lease**

Defendant, Dollar Tree Stores, Inc., leased from Shreveport Plaza Associates, LLC (Plaintiff's predecessor in title), space in a shopping center in Shreveport, Louisiana. The basic lease terms that are relevant to this dispute are summarized as follows:

- Para. A(4): Delivery Date for Possession of the Premises: June 1, 2000. (This date was later changed in a Lease Rider to August 1, 2000.)

- Para. A(5): Lease Commencement Date: 60 days from delivery of possession as stated in A4, or the date Tenant opens for business, whichever is earlier;

- Para. A(6): Rent Commencement Date: 60 days from date of delivery;

- Para. A(7): Term: 5 years, with three 5 year options;

- Para. C(1): Term: shall commence upon the date set forth in A6 or store opening date, whichever is earlier; and extend for the term set forth in A7;

  "Lease Year" shall consist of the first full calendar month and every anniversary thereof; if the Commencement Date does not occur on the first day of a calendar month, the first Lease Year shall consist of the partial first month plus the following twelve full calendar months; each succeeding Lease Year shall be twelve consecutive months following expiration of the first Lease Year;

- Para. C(2): Commencement Date: "At the time the commencement date is established, upon the request of Landlord, the parties will promptly execute a written instrument stipulating the Commencement Date and

> Expiration Date of the Term of the Lease."

Para. C(3): Options to Renew: Tenant is given the options to renew set forth in A7; the options shall be exercised automatically unless Tenant gives written notice to Landlord no later than six months prior to the expiration of the term that Tenant does not intend to exercise its option right;

The parties executed two Lease Riders to the Lease on March 28, 2000. One rider revises Paragraph A4 to provide an August 1, 2000 delivery date for the premises. The second rider is not relevant to this dispute.

**The Original Confirmation Certificate**

On October 31, 2000 (just three months after the scheduled delivery date set forth in the Lease Rider), Dollar Tree sent a letter to its Landlord (Plaintiff's predecessor in title) requesting confirmation of the following facts:

1. The store opened on September 26, 2000

2. The expiration of the original term is **October 31, 2005**

3. The lease term is for 5 years

4. The Lease Year for reporting gross sales is November to October

Robin Bowden, the then-Landlord's Lease Administrator, signed the letter confirming the information on November 6, 2000.

**Defendant's Notice of Non-Renewal; The Revised Confirmation Certificate**

On April 5, 2005, Defendant's Vice President and Corporate Counsel sent to Plaintiff a letter notifying Plaintiff that Defendant would not exercise its option for the location "and will close the store at the expiration of the term, to-wit: October 31, 2005." The next day,

James Morrison, one of the members of the Defendant limited liability company (and an attorney in New Orleans), faxed a letter back to Mr. Cotes stating:

> In response to your letter of April 5, 2005, my file indicates that the possession date for the above lease was August 1, 2000 making the commencement date October 1, 2000 and the termination date September 30, 2005. If you have something different would you please let me have a copy of it.

In response, Melissa Byrd, a paralegal in Defendant's Lease Administration Department, faxed to Mr. Morrison a copy of the October 31, 2000 letter to the original Landlord confirming that the store opened on September 26, 2000 and that the lease expires on October 31, 2005. In response to that document, Mr. Morrison faxed a letter to Ms. Byrd and included a copy of the Lease Rider, which Mr. Morrison's cover letter described as "fixing the commencement date as August 1, 2000."[1]

There is some disagreement about what happens next. Ms. Byrd testifies in her affidavit that, after receipt of Mr. Morrison's fax containing the Lease Rider, she spoke with Mr. Morrison on the telephone. She states that Mr. Morrison told her that he had a new tenant for the premises; that there was confusion regarding the date that the lease would terminate; and, as a "favor" he asked her to send him a revised certificate showing the lease would terminate at the end of September 2005. She complied with his request and sent him a "revised certificate" showing the following:

---

[1] Actually, the Lease Rider specifies August 1, 2000 as the "delivery date for possession of premises," not the date of lease commencement. The date for lease commencement was 60 days from that date (October 1, 2000) or the date the store opened (September 26, 2000), whichever was earlier.

1. The store opened on September 26, 2000

2. The turnover date was August 1, 2000

3. The Rent Commencement date was September 26, 2000

4. The Lease Commencement date was September 26, 2000

5. The expiration date of the original term is **September 30, 2005** [2]

6. The lease term is for five years.

The letter, which refers to itself as a "Commencement Confirmation Certificate," is signed by Ms. Byrd. Mr. Morrison received the fax and crossed out the date in Item 5 and wrote: "**?? September 25, 2005**." [3]

Mr. Morrison disputes a portion of Ms. Byrd's version of the events. He testifies in his affidavit that in April 2005, about the time he received the April 5, 2005 notice of non-renewal from Mr. Cote, he received inquiries from real estate agents about leasing the space because the agents had heard that Defendant was negotiating to move to a new shopping center around the block. He states that the negotiations led to a written lease proposal from one of the agents. He then testifies that: "At the time of the receipt of that lease proposal, affiant had received the [revised] lease Commencement Confirmation Certificate of April 14,

---

[2] The original certificate gave an expiration date of October 31, 2005. It is this change that created the confusion which led to this lawsuit.

[3] The question marks suggest Mr. Morrison had some doubt about when the lease should have expired, assuming the lease commenced on September 26, 2005. At the time he sent this fax, he may have overlooked the Lease's definition of a Lease Year, the application of which means that the Lease term actually began on the first day of the first full month or October 1, 2000.

2005 and was of the belief and understanding that Dollar Tree agreed its lease would continue for 5 years." Mr. Morrison states that, as a result of that belief, he required authority of Defendant to take a substitute tenant, and he called "Chris Teeter, Real Estate Manager of Dollar Tree." According to Mr. Morrison, Mr. Teeter advised that while Defendant wanted to build a bigger location, he had been unable to reach an agreement with the developers and was not ready to approve a substitution. As a result of that conversation, according to Mr. Morrison, he ended the negotiations with the prospective tenant.

On June 29, 2005, paralegal Patricia Inman, Manager of Defendant's Lease Administration Department, wrote to Mr. Morrison. She cited the original Commencement Letter dated October 31, 2000 providing an expiration date of October 31, 2005 for the Lease. She states that: "[I]n spite of the confusion generated when this issue first arose, the correct expiration date for the leased premises is October 31, 2005. Therefore, as stated in our correspondence of April 5, 2005, we will vacate the Premises on that date."

**Plaintiff's Complaint**

Plaintiff filed suit for enforcement of the Lease. Doc. 1. Plaintiff contends that Defendant's notice of non-renewal was due no later than six months before expiration of the original term; that the original term ended on either September 25, 2005 (presumably because the store opened on September 26, 2000) or September 30, 2005 (using a calculation based on the Lease's definition of the term "Lease Year"; that six months prior to September 25, 2005 would be March 24, 2005 and six months prior to September 30, 2005 would be March

29, 2005. Complaint, ¶¶ 7, 8, 10. Thus, Plaintiff alleges that Defendant's April 5, 2005 notice of non-renewal was too late under either scenario. ¶ 12-13. Plaintiff claims that Defendant has committed an anticipatory breach of the lease. ¶ 16.

**The Pending Motions**

Before the Court is Defendant's Motion to Dismiss (Doc. 14). In response to the Motion, Plaintiff filed a Motion to Strike (Doc. 20) and a Motion for Summary Judgment (Doc. 21). For the reasons that follow, it is recommended that Defendant's Motion to Dismiss be granted and that Plaintiff's Motion to Strike and Motion for Summary Judgment be denied.

Although Defendant styled its motion as one to dismiss, which generally permits review of only the complaint, both parties submitted documents and affidavits, and the court reviewed those documents and affidavits in resolving each of the pending motions. Therefore, out of an abundance of caution, the court will convert Defendant's Motion to Dismiss to a motion for summary judgment. See Triplett v. Heckler, 767 F.2d 210, 212 (5th Cir. 1985). Plaintiff is not prejudiced by that consideration because Plaintiff has already presented its own affidavit and other evidence in opposition to the motion and in support of its own motion for summary judgment. There is no indication that Plaintiff has held back in presenting evidence relevant to the motions.[4] Nevertheless, Plaintiff will be permitted to file,

---

[4] Indeed, Plaintiff argued that Defendant converted the motion to dismiss to a motion for summary judgment by seeking to have the court consider facts and documents outside the pleadings. Plaintiff's Brief, Doc. 21, p. 5.

within the ten day objection period that follows this Report and Recommendation, any additional summary judgment material.

**Summary Judgment Standard**

Under Fed. R. Civ. P. 56(c), a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986). The party opposing the motion may point to the same materials filed by the movant to satisfy his burden, but "only evidence -- not argument, not facts in the complaint -- will satisfy" the burden. Solo Serv Corp. v. Westowne Associates, 929 F.2d 160, 164 (5th Cir. 1991).

Unsworn pleadings and memoranda are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

**Analysis**

It appears that Plaintiff is correct on one important point: if the original confirmation letter is ignored, the proper expiration date of the Lease was September 30, 2005; and if that is the expiration date to be used in the calculation of the term, then Defendant's notice of non-renewal was untimely. Because the store opened on September 26, 2000 (a partial month), the first Lease Year began on October 1, 2000. Lease, ¶ C(1). Therefore, the first Lease Year expired on September 30, 2001. The first five year term expired on September 30, 2005.

But September 30, 2005 is not the expiration date agreed to by the parties in the October 31, 2000 confirmation letter signed by Ms. Iman for Defendant and by Ms. Bowden for Plaintiff's predecessor in title. In that letter, the parties stipulated that the expiration date of the Lease was October 31, 2005. If October 31, 2005 is the expiration date, then Defendant's notice of non-renewal was due no later than April 30, 2005. Thus, Defendant's April 5, 2005 notice of non-renewal was timely.

Plaintiff's attempt to avoid expiration of the Lease by finagling a revised confirmation certificate (*after* Defendant had provided a notice of non-renewal) is unavailing. At the time Plaintiff obtained the revised certificate, Defendant already had issued its then-timely notice of non-renewal. Had Plaintiff obtained the revised certificate before Defendant issued the

notice of non-renewal, the case would be more difficult. Or, if the revised certificate explicitly purported to rescind or nullify the notice of non-renewal, the case would be more difficult. But those are not the facts before the court. Indeed, as indicated by the question marks next to the expiration date on the revised certificate, even Mr. Morrison was unsure about the expiration date when he signed the revised certificate. That ambiguity shows there was no meeting of the minds with regard to changing the Lease's expiration date.

Plaintiff attempts to avoid the original certificate by arguing that it was not executed in proper form; that it was executed at the request of Defendant and not the Landlord (as the Lease contemplates); and that the person who signed the lease for the then-Landlord may not have had proper authority to do so. None of these arguments requires extended discussion. No particular form was required for the original certificate. Paragraph C(1) of the Lease simply says that the parties will promptly execute a written instrument stipulating the commencement and expiration dates of the Lease. No particular form (other than a writing) is required. Lease, ¶ C(1), Y(7). And the fact that Paragraph C(1) contemplates that the Landlord, as opposed to the Tenant, will request the certificate, is not material. It matters not who initiated the process. What matters is that a written stipulation was signed by both parties, and that it was done on the front end – shortly after the Lease commenced – at a time when the parties needed to nail down those dates for future planning purposes.

Finally, Plaintiff's rank speculation that Ms. Bowden, who signed the original certificate for the then-Landlord in her capacity as "Lease Administrator," may have lacked

authority to do so is not supported by any evidence whatsoever. There also is no indication that Plaintiff raised that issue until Defendant filed its motion in this case, almost five years after the original certificate was executed.

Stipulations regarding the commencement and expiration dates of a lease serve a very important purpose in the commercial real estate industry. There is often ambiguity regarding the exact date when a tenant actually opened for business or when the tenant actually took possession of the leased premises. Stipulations executed by the parties, typically soon after lease commencement, setting forth the relevant dates remove that ambiguity and provide clear signposts for the parties to rely upon in planning their future business dealings. If a party could disavow such a stipulation five years later on the basis of an alleged error in calculation, then there is no benefit to the parties in executing it in the first place.[5]

**Conclusion**

Plaintiff is bound by the original certificate executed by a representative of the original landlord. Therefore, the expiration date of the Lease was October 31, 2005, and Defendant's notice of non-renewal was timely. Plaintiff has no valid claim for anticipatory breach of the lease. The Defendant's Motion to Dismiss (converted to a motion for summary

---

[5] While it would appear on the surface that the October 31, 2005 expiration date in the original confirmation letter was erroneous (because the five year term otherwise would have expired on September 30, 2005), there may have been valid reasons why the parties agreed to an October 31, 2005 expiration date as set forth in that letter. Indeed, the then-Landlord may have perceived a significant benefit to itself in extending the lease expiration date for an additional month. Whatever the parties' motivations might have been, Plaintiff is bound by the expiration date set forth in the original confirmation letter.

judgment) should be granted dismissing Plaintiff's lawsuit with prejudice. Plaintiff's Motion for Summary Judgment should be denied.

**Motion to Strike**

Also before the court is Plaintiff's Motion to Strike (Doc. 20). Plaintiff seeks to strike allegations in Defendant's memorandum that Mr. Morrison acted improperly in communicating directly with Ms. Byrd, a paralegal employed in Defendant's Lease Department. After Mr. Cote sent the notice of non-renewal, and after Mr. Morrison sent a letter back to Mr. Cote questioning the termination date, Ms. Byrd initiated contact directly with Mr. Morrison when she faxed him the original certificate. Presumably, she did so at the direction of Mr. Cote or some other supervisor in Defendant's Lease Department. Under these circumstances, the court sees nothing improper with the contact between Ms. Byrd and Mr. Morrison. She initially contacted him; not vice versa. The court also notes that the revised certificate is on Defendant's stationery and, therefore, it appears that it was drafted by Ms. Byrd or someone else in Defendant's Lease Department. It does not appear to have been drafted by Mr. Morrison, although it was certainly created as a result of the telephone communications between Mr. Morrison and Ms. Byrd.

Even though the court does not accept Defendant's allegations of improper conduct, that conclusion does not mean that the allegations should be stricken pursuant to Rule 12(f). Motions to strike are disfavored and are rarely granted. Boyd's Bit Service v. Specialty Rental Tools, 332 F.Supp.2d 938, 944 (W.D. La. 2004)(Melancon, J.). Moreover, mere

allegations of falsity do not warrant relief under Rule 12(f).  In any event, this is an issue better directed to the bar association if Plaintiff truly believes that the allegations equate to attorney misconduct.  The issue does not affect the undersigned's recommendation as to how the merits of this case should be resolved.  Accordingly, it is recommended that the Motion to Strike be denied.

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 21) and Plaintiff's Motion to Strike (Doc. 20) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss (Doc. 14), which was converted to a motion for summary judgment, be **granted**, and that Plaintiff's lawsuit be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and

recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 5th day of December, 2005.

*[signature]*
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE